IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPRINGSTONE, INC. AND | § | |
| WESTPARK SPRINGS, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-1508 |
| | § | |
| HISCOX INSURANCE COMPANY, INC., | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND DEMAND FOR JURY TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, Springstone, Inc. ("Springstone") and Westpark Springs, LLC ("Westpark"),
file this Complaint for Declaratory Judgment and Demand for Jury Trial, and respectfully aver
the following:

### PARTIES

1.      Plaintiff, Springstone, Inc., is a corporation organized under the laws of the State
of Delaware with its principal place of business in Louisville, Kentucky.

2.      Plaintiff, Westpark Springs, LLC, is a limited liability company organized under
the laws of the State of Delaware with its principal place of business in Texas, and doing business
as Westpark Springs, a hospital located in Richmond, Fort Bend County, Texas.

3.      Defendant, Hiscox Insurance Company, Inc. ("Hiscox"), is an insurance company
organized under the laws of the State of Illinois with its principal place of business at 104 South
Michigan Avenue, Suite 600, Chicago, Illinois 60603, and it is registered as a foreign insurance
company in the State of Texas.  Hiscox maintains a registered agent with the Texas Department of

Insurance; therefore, Hiscox may be served with process by serving its registered agent: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 787013218.

## JURISDICTION AND VENUE

4.      Subject matter jurisdiction is based on diversity of citizenship, under 28 U.S.C. §1332 (a)(3), as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States and a citizen of a foreign state.  This Court also has supplemental jurisdiction over all related claims under 28 U.S.C. §1367.

5.      Venue is proper pursuant to 28 U.S.C. §1391(a)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this district and division.

## NATURE OF THE DISPUTE

6.      Springstone, Inc. ("Springstone") is a behavioral healthcare company which operates twelve wholly owned subsidiary hospitals throughout the United States.  One of these hospitals is Westpark Springs, LLC, ("Westpark") located in Richmond, Texas.

7.      This insurance coverage dispute arises out of a demand for insurance coverage and indemnity made by Springstone against Hiscox.  Hiscox has failed to comply with its obligations under an insurance policy issued to Springstone.  Springstone and Westpark now seek a declaration of rights, obligations, duties and liability under the insurance policy issued by Hiscox.

8.      Springstone and Westpark also seek damages, attorneys' fees, and costs against Hiscox for breaching the terms of the insurance policy and the implied covenant of good faith and fair dealing by unreasonably taking coverage positions contrary to established insurance law and interpreting its policy in a manner so as to deny Springstone and Westpark the coverage and policy benefits to which they are entitled.

**A. The Insurance Policy**

9.      Hiscox issued a written policy to Springstone, Policy No. UVA1490983.15 (the "Policy"), effective October 8, 2015 to October 8, 2016 (the "Policy Period"). *A true and correct copy of relevant portions of the Policy is attached hereto as Exhibit A*. The Commercial Crime Insurance policy provisions afford coverage as follows: Coverages A(l), B(l) and (2), C, D, and E each have a $1 million Limit of lnsurance with a $15,000 Deductible Amount per occurrence; and Coverage A(2) has a $500,000 Limit of Insurance with no deductible amount.

10.      The Employee Theft provision, which is Coverage (A)(1) of the Crime Insurance coverage of the Policy, provides:

> **We** will pay for loss of or damage to **Money**, **Securities** and **Other Property** resulting directly from **Theft** and/or **Forgery** committed by an **Employee**, whether identified or not, acting alone or in collusion with other persons.

11.      Exclusion B applies to **Acts of Employees Learned of by You Prior to the Policy Period** and states:

> Loss caused by an **Employee** if the **Employee** had also committed **Theft**, **Forgery** or any other dishonest act prior to the effective date of this Policy and **You** or an **Executive Employee** not in collusion with the **Employee**, learned of that **Theft**, **Forgery** or dishonest act prior to the Policy Period shown in the Declarations.

> However, this provision shall not apply if the **Theft**, **Forgery** or dishonest act occurred prior to the **Employee** becoming **Your Employee** and the amount of such act did not exceed $10,000.

The Crime Insurance coverage defines "**Theft**" as "the unlawful taking of property to the deprivation of the Insured. Solely with respect to Coverage A(3) Clients' Property, Theft shall mean the unlawful taking of property to the deprivation of a **Client**." *See* Definitions FF. Also, the Policy defines "Executive Employee" as "Your proprietor, natural person partner, member of the board of directors, member of the board of trustees, Member, Manager, officer and any Employee in a risk management, general counsel, insurance or human resources department or

function."  *See* Definitions L.  The terms "committed," "dishonest act," and "learned" are not defined by the Policy.

**B. The Employee-in-issue's Background**

12.    As background, Springstone hired the Employee-in-issue, referred to herein as "LV," as Westpark's Financial Coordinator on September 30, 2014.  The senior administrative staff at Westpark consists of a CEO, CFO, and Director of Nursing.  The Financial Coordinator reports to the CFO and is responsible for standard accounting clerical duties primarily in the areas of accounts payable and payroll.

13.    After Springstone hired LV, Springstone received a criminal background screening on or about October 14, 2014.  The screening reflected that, in 2003, a Harris County, Texas, court had imposed deferred adjudication on LV for a charge of theft in the amount of $1,500 to $20,000 ("LV's Deferred Adjudication").  The criminal background check stated as follows:

- Convictions Admitted:        No
- Charges          1. Theft $1,500-$20,000(F)
- Disposition      1. Deferred Adjudication of Guilt
- Sentence         1. 5 Years Probation; 05/28/2009-Deferred Adjudication Terminated.

Because the trial court deferred adjudication, LV was never convicted or found guilty of the charged offense of theft, or of any other dishonest act.  Additionally, Springstone was advised in the background check that LV had not pled guilty or otherwise admitted the charges by pleading nolo contendere (Convictions Admitted: No).

**C. The Claim in Issue: Loss Due to Theft Committed by LV at Westpark**

14.    The claim at issue involves the acts of Westpark's Financial Coordinator, LV, in taking funds from Westpark (the "LV Westpark Theft").  On or about July 18, 2016, Springstone

became aware of a diversion of monies by the Employee, LV, from Westpark over a period of approximately eighteen (18) months.  As Financial Coordinator, LV was responsible for the processing of employee compensation.  During this period, LV engaged in a scheme in which she paid unauthorized payroll checks, in the name of numerous terminated employees, by way of direct deposits transferred to bank accounts set up and controlled by LV and used for her benefit.  LV resigned her employment without notice on July 18, 2106, during Springstone's investigation of missing documents, ultimately tied to the thefts.   In total, LV diverted $329,859.80 in unauthorized gross wages.

15.     Springstone reported the LV Westpark Theft to Fort Bend County Sheriff's Department on July 18, 2016.  On or about October 24, 2016, LV was indicted for theft in Fort Bend County, Texas.   On information and belief, these charges and the related criminal prosecution is still pending.

**D. Hiscox's Denial of Coverage of Springstone's Claim Due to the LV Westpark Theft**

16.     Springstone timely tendered a Notice of Claim under the Policy to Hiscox on July 22, 2016. The claim sought indemnity of Springstone and Westpark's losses as a result of the LV Westpark Theft.  *A true and correct copy of the Notice of Claim is attached hereto as* ***Exhibit B***.  Springstone and Westpark have satisfied all terms and conditions of the Policy.  Hiscox has denied coverage for Plaintiffs' claim for the following alleged reasons: a) LV committed theft or a dishonest act prior to the Policy's effective date of October 8, 2015, because of LV's Deferred Adjudication; and b) Springstone, through Westpark, knew that LV had committed a theft or dishonest act prior to the Policy's effective date of October 8, 2015, because it knew of LV's Deferred Adjudication.  Hiscox's refusal to pay Plaintiffs' Claim is a material

breach of the Policy and the implied covenant of good faith and fair dealing.  As a result of Hiscox's actions, Springstone and Westpark seek damages and non-monetary relief.

**E. Hiscox's Interpretation Violates Public Policy and is Inconsistent with Policy as a Whole**

17.   Hiscox's interpretation of the insurance Policy contravenes public policy and is inconsistent with the construction of the insurance Policy as a whole.  Springstone could not have lawfully fired LV after she had been hired in 2014 based on the information of LV's Deferred Adjudication of 2003 reflected in the background check.  Springstone's consideration and use of the information in the background check is governed by federal and state law, including laws enforced by the Equal Employment Opportunity Commission ("EEOC").  The EEOC has determined that an employer's unlawful use of criminal background checks violates the prohibition against employment discrimination based on race and national origin.  Employers cannot exclude potential hires from employment based on prior criminal conduct that is not recent without violating EEOC Guidelines.

18.   In addition, the other provisions of the insurance Policy, found under the employment liability coverage section, provide coverage for any loss attributable to any wrongful employment practice, including wrongful discharge. In the application for the initial insurance policy issued by Hiscox in 2014, which the subject insurance Policy renews, Hiscox asked numerous questions about Springstone's compliance with state and federal employment law, making it abundantly clear that strict compliance with state and federal employment laws was a requirement of Springstone obtaining employment practices liability coverage from Hiscox. Therefore, Hiscox's interpretation of Exclusion B is invalid as against public policy and is inconsistent with other provisions of the insurance Policy and the requirements set forth in its insurance policy application.

## FIRST CAUSE OF ACTION
## DECLARATORY RELIEF

19.     Plaintiffs reallege and incorporate by reference each and every allegation set forth above.

20.     A dispute and actual, justiciable controversy has arisen and now exists between Plaintiffs and Hiscox concerning their respective rights, obligations, duties, and liabilities under the Policy in connection with the Claim related to the LV Westpark Theft.  Under the terms of the Policy, Hiscox was obligated to indemnify Plaintiffs' losses resulting from the LV Westpark Theft.

21.     Springstone and Westpark desire a judicial determination and declaration of the parties' respective rights, obligations, duties, and liabilities under the Policy regarding Plaintiffs' losses resulting from the LV Westpark Theft.

22.     Declaratory relief is appropriate and necessary at this time so that the parties may ascertain their respective rights, obligations, duties, and liabilities under the Policy in connection with the LV Westpark Theft.

23.     Under the provisions of Exclusion B, the terms "committed," "dishonest act," and "learned" are not defined by the Policy.  Therefore, the terms "committed," "dishonest act," and "learned" carry their common, ordinary meanings.  Construing the Policy as per the common, ordinary meanings of these words, Plaintiffs seek a declaration from the Court that Exclusion B is inapplicable to this matter for the following reasons: a) in 2003, the Harris County, Texas, Criminal Court did not determine that LV had committed theft, or any other dishonest act, but imposed deferred adjudication on LV; b) Springstone and Westpark did not learn that LV had committed a dishonest act prior to the Policy Period; and c) the Harris County Criminal Court did not determine that the amount of the theft, or dishonest act, exceeded $10,000.

24.     Asserted in the alternative, certain words stated in Exclusion B of the Policy are ambiguous, if not on their face, then as applied to the facts in this matter.  In particular, the Policy is ambiguous as to the meaning of the following: 1) "committed Theft, Forgery or any

other dishonest act"; 2) "learned of that Theft, Forgery or dishonest act"; 3) "the Theft, Forgery or dishonest act occurred," and 4) "the amount of such act did not exceed $10,000."  Because of these ambiguous provisions, Plaintiffs seek a declaration from the Court that Exclusion B is inapplicable to this matter for the following reasons: a) in 2003, the Harris County, Texas, Criminal Court did not determine that LV had committed theft, or any other dishonest act, but imposed deferred adjudication on LV; b) Springstone and Westpark did not learn that LV had committed a dishonest act prior to the Policy Period; and c) the Harris County Criminal Court did not determine that the amount of the theft, or dishonest act, exceeded $10,000

25.    The insurance Policy must also be interpreted in conformity with public policy, applicable state and federal employment laws, and the requirements set forth in the insurance Policy application completed to obtain initial insurance coverage with Hiscox.

## SECOND CAUSE OF ACTION
### BREACH OF CONTRACT

26.    Springstone and Westpark reallege and incorporate by reference each and every allegation set forth above.

27.    The Policy is a valid and enforceable written contract that affords Springstone and Westpark insurance coverage for the claim related to and arising from the LV Westpark Theft.

28.    Plaintiffs have made written demand that Hiscox acknowledge coverage under the Policy in connection with the LV Westpark Theft and that Hiscox pay for indemnity and other expenses incurred in connection with the LV Westpark Theft.

29.    Plaintiffs have satisfied all applicable terms and conditions of the Policy.

30.    Hiscox has breached the Policy by, among other things, wrongfully:

   a.   Refusing to pay Plaintiffs' indemnity and other expenses in connection with the LV Westpark Theft, thus not honoring its obligations to promptly pay Plaintiffs' claim;

b.   Denying Plaintiffs the right to benefits to which they are entitled under the Policy; and

c.   Taking coverage positions contrary to controlling law.

31.   By breaching the Policy, Hiscox has waived their rights under the Policy.

32.   All conditions precedent to Springstone and Westpark's claim for relief have been performed or have occurred.

33.   As a direct and proximate result of Hiscox's breaches, Plaintiffs have been damaged in an amount to be proven at trial.

34.   To the extent necessary as an affirmative defense, a portion of the Policy, that is, Exclusion B, or certain words stated in Exclusion B of the Policy, are ambiguous, if not on their face then as applied in this matter. Therefore, Springstone and Westpark reallege and incorporate by reference the allegations set forth above in Paragraph #20.  Because of these ambiguous provisions, Plaintiffs seek a declaration from the Court that Exclusion B is inapplicable to the facts of this case because the Employee in question did not commit a dishonest act that was known to Springstone prior to her employment.

### THIRD CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING

35.   Springstone and Westpark reallege and incorporate by reference each and every allegation set forth above.

36.   The Policy contains an implied covenant of good faith and fair dealing under which Hiscox agreed not to take any action that would deprive Springstone and Westpark of their rights and benefits under the Policy.

37.     Hiscox has breached this implied covenant of good faith and fair dealing by engaging in a course of conduct intentionally designed to deprive Plaintiffs of their rights and benefits under the Policy.

38.     Hiscox further breached its implied covenant of good faith and fair dealing by declining coverage without properly reviewing and/or investigating the claim in February of 2017. Springstone requested that Hiscox reexamine the underlying facts related to the LV Westpark Theft in April 2017, but Hiscox has wholly failed to respond to Plaintiffs' request.

39.     Hiscox also breached the implied covenant of good faith and fair dealing by asserting unreasonable interpretations of the Policy with the intention of depriving Springstone and Westpark of the rights and benefits due to Plaintiffs under the Policy.  Hiscox's breaches of the implied covenant of good faith and fair dealing include, but are not limited to, intentionally, wrongfully, and maliciously:

      a.  Denying payment of Springstone and Westpark's claim in relation to the LV Westpark Theft, and Hiscox's refusing to honor its obligations to promptly pay Plaintiffs' claim;

      b.  Basing Hiscox's claims-handling decisions on its desire to reduce or avoid its obligations to Plaintiffs;

      c.  Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Policy;

      d.  Misrepresenting to Plaintiffs pertinent facts or insurance policy provisions relating to coverages at issue;

      e.  Failing to adopt and implement reasonable standards for the prompt investigation and processing of Plaintiffs' claim;

    f.   Failing to affirm or deny coverage of Plaintiffs' claim within a reasonable time;

    g.  Not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiffs' claim;

    h.  Failing to provide promptly a reasonable explanation for the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim;

    i.   Preferring Hiscox's own interests over the interests of Plaintiffs;

    j.   Denying Plaintiffs the rights and benefits to which they are entitled under the Policy, with the intention of coercing Plaintiffs to forgo those rights and benefits; and

    k.  Taking coverage positions contrary to controlling law.

40.    By breaching the implied covenant of good faith and fair dealing, Hiscox waived its rights under the Policy.

41.    As a direct and proximate result of Hiscox's breaches of the implied covenant of good faith and fair dealing, Plaintiffs have been required to file this action to obtain policy benefits and have been damaged in an amount to be proven at trial.

42.    As a further direct and proximate result of Hiscox's breaches of the implied covenant of good faith and fair dealing, Plaintiffs are entitled to recover their attorneys' fees and costs incurred in establishing their rights to obtain benefits under the Policy.

43.    Further, Plaintiffs seek exemplary damages, because Hiscox's conduct was committed knowingly, intentionally, or with gross negligence, and/or was fraudulent, malicious, intentional, or grossly negligent, so as to justify the imposition of exemplary damages.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE PROMPT PAYMENT OF CLAIMS ACT

44.     Springstone and Westpark reallege and incorporate by reference each and every allegation set forth above.

45.     Hiscox has violated the provisions of Chapter 542, subchapter B, of the Texas Insurance Code for failure to promptly pay Plaintiffs' claim in relation to the LV Westpark Theft Claim.

46.     Plaintiffs' have a valid claim, and Hiscox is liable for the claim, but violated Chapter 542 by not timely:

      a.   Investigating or requesting information about the claim;

      b.   Accepting, rejecting, or extending the deadline for deciding the claim; or

      c.   Paying the claim.

47.     As a direct and proximate result of Hiscox's violations of Chapter 542, Plaintiffs have been required to file this action to obtain policy benefits and have been damaged in an amount to be proven at trial.

### ATTORNEYS' FEES

48.     In addition to the aforementioned damages, Plaintiffs demand statutory attorneys' fees in accordance with Texas Civil Practice & Remedies Code §37.009 or §38.001.

### JURY DEMAND

49.     Plaintiffs demand a jury trial and will tender the appropriate fee with this Complaint or prior to the applicable deadline.

## PRAYER FOR RELIEF

50.     WHEREFORE, Plaintiffs, Springstone, Inc. and Westpark Springs, LLC, pray that, after a trial of this matter, the Court holds Defendant, Hiscox Insurance Company, Inc., liable and award Plaintiffs all requested damages, including pre- and post-judgment interest, costs, reasonable attorneys' fees, and such other and further relief as the Court may deem just.

Respectfully submitted,

**PAUL G. PRESTON**   ATTORNEY-IN-CHARGE
TX Bar #00786813; SDTX #17274
**THE PRESTON LAW FIRM, L.L.C.**
141 Robert E. Lee Boulevard, #118
New Orleans, Louisiana 70124
Telephone:  504-282-2530
Facsimile: 504-282-2531
E-mail: ppreston@prestonlawfirm.com
**ATTORNEY FOR PLAINTIFFS,
SPRINGSTONE, INC. AND
WESTPARK SPRINGS, LLC**

<u>**OF COUNSEL**</u>:

Linda E. Klamm
California Bar No. 71506, appearing *Pro Hac Vice*
HANSON BRIDGETT, LLP\
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 777-3200
Facsimile:    (415) 541-9366
E-mail lklamm@hansonbridgett.com

Alicia K. Dowdy
TX Bar #06072900; SDTX. #11175
THE PRESTON LAW FIRM, LLC
1302 Wealden Forest Drive
Spring, Texas 77379
Telephone: (832) 723-7681
Facsimile: (281) 379-2468
E-mail: dowdy.alicia@yahoo.com